# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL BLANCHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:19-cv-997-AMM** |
| **CITY OF BIRMINGHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case comes before the court on Defendant City of Birmingham's ("the City") Motion For Summary Judgment. Doc. 29. For the reasons stated below, the motion is due to be granted.

## I. BACKGROUND

Under this court's Initial Order, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." Doc. 26 at 18. Plaintiff Michael Blancher, who was a police officer with the City's police department, controverted only three of the facts in the City's statement of material undisputed facts. Doc. 30 at 3-9; Doc. 31 at 2. Accordingly,

for purposes of summary judgment, these are the relevant undisputed facts construed in the light most favorable to Officer Blancher:

On January 6, 2018, Coleecia Cainion, an off-duty police officer for the City, was driving by the scene of a three-car accident and pulled over. Doc. 28-2 at 71; *see* Doc. 30 at 3.[1] Michael Blancher, Adam Voss, and Tiffany Calhoun, all police officers for the City, arrived on the scene. Doc. 1 ¶ 16; *see* Doc. 30 at 3. Officer Blancher, who had been a police officer for the City since 2009, testified in his deposition that he was the officer in charge of the scene and was ultimately responsible for investigating the accident. Doc. 28-1 at 7, 10; *see* Doc. 30 at 3.

Video footage from Officer Blancher's body camera ("the video") shows him approach the scene of the accident on foot. Doc. 28-1 at 43.[2] The video shows a Ford Taurus with no visible damage and two catastrophically damaged cars: a Toyota Camry pushed up onto the guardrail of a bridge and a Chevrolet Avalanche. Video

---

[1] Defendant's Exhibit 1 to the deposition of Sergeant Katrina Johnson is an inter-office communication from Sergeant Katrina Johnson to Chief Orlando Wilson that summarizes Sergeant Johnson's interviews of various people, including Officer Cainion. Doc. 28-2 at 70-81. Officer Blancher did not object to the admissibility of this document for the purposes for which the City uses it.

[2] The City submitted a video file that was Defendant's Exhibit 3 to Officer Blancher's deposition. *See* Doc. 28-1 at 43. In his deposition, Officer Blancher testified that the exhibit appeared to be footage from his body camera. Doc. 28-1 at 14. Sergeant Johnson testified that she relied on the footage in her investigation. Doc. 28-2 at 10. Because Officer Blancher did not object to the authenticity of this footage, and because both parties use it to support their arguments, *see* Doc. 30 at 17-18; Doc. 31 at 10, the court accepts that the footage is admissible for the purposes for which the parties use it. Citations to the footage refer to the approximate minute and second of the video file the City submitted as evidence.

at 0:44-1:15, 9:14; *see also* Doc. 28-1 at 44-45. Two people were injured in the accident: Christopher King, who was driving the Avalanche, and Brianna Cook, who was driving the Camry. Doc. 28-1 at 44-45; *see* Doc. 30 at 3-4.

After Officer Voss secured the bridge, Video at 8:40; *see also* Doc. 30 at 3 (citing Doc. 1 ¶ 16)), the video shows Officer Blancher approach Officer Cainion, who gives him a piece of paper listing witnesses she'd identified. Video at 8:40, 9:18-10:42; *see also* Doc. 30 at 3 (citing Doc. 1 ¶ 16)). Officer Cainion mentions that when the driver of the Avalanche got out of the car, he was throwing stuff over the bridge. Video at 11:18-24. A witness standing nearby tells the officers that the Avalanche went airborne during the accident, and that once it hit the ground, Mr. King "immediately . . . crawled out" of the Avalanche. *Id.* at 15:15-15:45. The witness speculates that Mr. King must have been intoxicated, because otherwise his injuries would have been much worse. *Id.*

The video then shows Officer Blancher enter the ambulance where Mr. King was sitting on a stretcher. *Id.* at 17:10-19:12. Officer Blancher says, "People are saying you're drunk." *Id.* Mr. King denies being drunk and says that he was eating ice cream. *Id.* Officer Blancher suggests to Mr. King that Mr. King is "just messed up because of the accident," and Mr. King agrees. *Id.* Officer Blancher tells Mr. King that people were saying that Mr. King was throwing stuff over the bridge; Mr. King denies that he did so. *Id.* The interview lasts about two minutes. Then Officer

Blancher asks Officer Calhoun to go inside the ambulance and ascertain whether she can smell any alcohol. *Id.* at 19:15. Officer Blancher tells Officer Calhoun that he doesn't smell it. *Id.* When Officer Calhoun exits the ambulance again, Officer Blancher references the smell and says, "Not enough to do anything with, though," and Officer Calhoun says, "Might not be." *Id.* at 20:05-20:25. Officer Calhoun then says, "I can smell it, but it ain't like." Her voice trails off, and the rest of her sentence cannot be heard on the video. *Id.*

The video then shows Officer Blancher confirm with Mr. King's girlfriend that the license plate on the Avalanche is not the plate associated with the vehicle identification number of the Avalanche. *Id.* at 21:00-21:42. Mr. King's girlfriend tells Officer Blancher that Mr. King put the license plate from another car onto the Avalanche, and Officer Blancher says, "He shouldn't have done that." *Id*.; *see also id.* at 13:05-13:15. Mr. King's girlfriend asks if she's going to jail, and Officer Blancher says no. *Id.* at 21:15-21:42. Officer Blancher says that Mr. King is in trouble because the accident was his fault because he drove into the opposite lane, but other than the insurance company's liability, "You're fine. He's fine." *Id*.

The video shows Officer Blancher approach Officer Cainion and say, "I checked him out and got all his information, but there's just not enough there to charge him with like a DUI because there's not enough. You can smell a very faint smell but nothing strong. And that could be from point of impact. Could have bursted

4

a bottle or something. All I can do is just write down what everybody said. But I can't do anything else about it." *Id.* at 23:39-24:05. Officer Cainion tells Officer Blancher that Mr. King was throwing stuff off the bridge and points somewhere below the bridge. *Id.* at 24:02-24:20. Then Officer Cainion says, "Maybe you could get his blood, I don't know." *Id.* Officer Blancher responds "I mean if there's no fatality they're not going to do that." *Id.*

The video shows Officer Blancher approach Officer Voss shortly thereafter and say, "I'm done for the rest of the day, this is ridiculous. I'm not even going to get out of here on time at this point." *Id.* at 24:32-25:38. Officer Voss responds: "You're going to have to call [inaudible], get a search warrant for his blood." *Id.* After a pause, Officer Blancher says, "There's not enough to do it, [inaudible] even smell it." *Id.* Officer Voss says, "Really?" *Id.* Officer Blancher says, "Yeah. I don't even smell it myself, Calhoun says she smells a faint smell of possible alcohol. That's just not enough." *Id.* Officer Voss says, "Well, I don't know, I mean," and his voice trails off. *Id.* Officer Blancher says, "I mean what could I do? Put it in the report? I didn't smell it. Calhoun says she barely can smell it, if that." *Id.*

The video shows Officer Calhoun approach Officer Blancher a moment later and ask him what they're going to do about the license plate issue. *Id.* at 25:55-26:10. Officer Blancher says he doesn't know. *Id.* Mr. King's girlfriend approaches the officers and tells them that there's a book in the Avalanche she needs. *Id.* at 26:10-

27:10. She explains that the book contains appointments and checks related to the chimney service business where Mr. King works, and that the checks need to be returned if Mr. King is going to jail. *Id.* She describes the appearance of the book and says that the officers can look through it. *Id.*

The video shows Officer Voss approach Officer Blancher and say, "It ain't going to be alcohol. He's got empty bags in there." *Id.* at 27:14-29:00. Officer Blancher responds, "That's not enough to do anything with, is it?" *Id.* Officer Voss shrugs. *Id.* Officer Blancher says, "I mean, you've been doing this longer than I have, that's why I'm asking what you think. I didn't see no drugs." *Id.* Officer Voss says, "Here's the thing. I don't want to say anything that causes you to do more work." *Id.* Officer Blancher responds, "Yeah honestly I don't want to do any more work." *Id.* Officer Voss says, "I'll put it like this, if it was me, I would." *Id.* Officer Voss then turns to Mr. King's girlfriend and asks, "What was it—does he do heroin?" *Id.* Mr. King's girlfriend nods affirmatively. *Id.* Officer Voss tells Officer Blancher, "That's what he was throwing over that bridge." *Id.* Officer Blancher begins walking toward the Avalanche, and Officer Voss says, "I mean, if they've got insurance." *Id.* Officer Blancher says, "Everybody's got insurance." *Id.* Officer Voss says, "If they've got insurance, it'll cover it anyway." *Id.* Officer Blancher says, "That's what I was saying." *Id.* Officer Voss says, "Yeah, but it's . . . it's on you." *Id*. Officer Blancher says, "I don't smell any alcohol. Do you smell alcohol." *Id.* Officer Voss

6

says, "No but it's just drugs." *Id.* Officer Blancher stands near the open window of the Avalanche and says, "I smell absolutely zero alcohol here." *Id.* Officer Voss says, "Yeah but you've got his bags [inaudible]. He was throwing [inaudible] needles over the thing." *Id.*

The video shows the two officers discuss what a hypothetical report could say: that witnesses thought they smelled alcohol, that the officer didn't smell any alcohol or observe any alcohol containers on the scene. *Id.* at 28:55-29:35. Officer Voss concludes, "I wouldn't even put it in there." *Id.* Officer Blancher says, "That's what I was thinking." *Id.* Officer Voss says, "Because then they'll want to know why, you know, why you even put it in there. I just would leave that part out." *Id.* Officer Voss then stops talking and motions toward Officer Blancher's body camera, and Officer Blancher says, "Yeah I'm recording, I don't mind. I've not done nothing wrong, you've not done nothing wrong." *Id.* After a pause, Officer Blancher says (apparently referring to the accident scene): "There's nothing to prove nothing here." *Id.*

The video then shows Officer Blancher attempt to check on Ms. Cook, who is in an ambulance. *Id.* at 30:25-30:50. Officer Blancher then tells a person identifying herself as a reporter that Ms. Cook was put in a neckbrace. *Id.* at 30:55-31:50. Shortly after the conversation between Officer Blancher and the reporter

concludes, Officer Voss approaches Officer Blancher and says, "Kill [inaudible], kill that." *Id.* at 31:55-32:04. A finger obscures the lens, and the recording stops. *Id*.

At his deposition, Officer Blancher testified that he couldn't recall checking for outstanding warrants on any of the drivers involved in the accident. Doc. 28-1 at 12; *see* Doc. 30 at 4. Officer Blancher testified also that he couldn't recall checking the status of any of those drivers' licenses. Doc. 28-1 at 12; *see* Doc. 30 at 4. Officer Blancher testified that he did not suspect Mr. King of drug or alcohol use; rather, Officer Blancher believed Mr. King had a head injury. Doc. 28-1 at 15; *see* Doc. 30 at 5. Officer Blancher testified that he did not pursue a warrant to test Mr. King's blood for the presence of drugs or alcohol and did not perform a field sobriety test on Mr. King. Doc. 28-1 at 15, 43; *see* Doc. 30 at 5. When asked why he did not suspect Mr. King of drug or alcohol use, Officer Blancher testified that he didn't see any alcohol or drugs on the scene. Doc. 28-1 at 15. Officer Blancher testified that he did not have the area below the bridge searched because even if something was found, there would be no way to prove that it belonged to Mr. King. *Id*. at 15-16. Officer Blancher testified that "Officer Voss told me he thought he saw some . . . empty baggies . . . on the ground," but that he did not remember seeing any baggies, and that even if empty baggies were present, he believes that no conclusions could be drawn from them. *Id*. at 9; *see* Doc. 31 at 2. He further testified that on Mr. King's girlfriend's request, Officer Blancher retrieved a backpack from the Avalanche and

8

gave it to her because she said it was hers. Doc. 28-1 at 17; *see* Doc. 30 at 6. Officer Blancher testified that he did not search the backpack because he "didn't feel it had any bearing" on the investigation. Doc. 28-1 at 17.

The City trains officers to notify their supervisor and call an accident reconstructionist when an accident involves "serious injury (life altering injury, or potential for death)," but Officer Blancher testified that at the time, based on his experience, he did not consider the accident to be serious. Doc. 28-1 at 10-11, 37; *see* Doc. 30 at 4. In Officer Calhoun's opinion, Ms. Cook's injuries did not appear to be life threatening. Doc. 31-2 at 4; *see* Doc. 31 at 3.

On the uniform traffic crash report Officer Blancher filled out, in the section pertaining to Mr. King, the box labelled "Sobriety/Officer Opinion" indicates no alcohol or drugs. Doc. 28-1 at 44; *see* Doc 30 at 6; *see also* Doc. 28-1 at 16. There is a small section entitled "Narrative" in which Officer Blancher recites brief statements by Mr. King and the third driver and reports that Ms. Cook "was unable to give a statement due to injuries." Doc. 28-1 at 46.

There is no indication on the report that witnesses stated that items were thrown over the bridge or that the license tag on the Avalanche had been switched. Doc. 28-1 at 44-49; *see* Doc. 30 at 6.

On February 15, 2018, a little over a month after the accident, Ms. Cook's mother filed a citizen's complaint with the City's police department. Doc. 28-2 at

42; *see* Doc. 30 at 6. The complaint stated that Ms. Cook's "entire left side [is] broken," including her neck, pelvis, hip bone, and tail bone. Doc. 28-2 at 42. In the section where the complainant identifies the officers involved in the incident, only Officer Blancher and Officer Voss are listed. *Id*. The complaint alleges that Officers Blancher and Voss "did not perform any test" on Mr. King. *Id.* Sergeant Katrina Johnson was the supervisor who took the complaint over the phone. *Id*.

On February 18, 2018, Ms. Cook's great-uncle emailed the Mayor of the City to inform him of the Cook family's concerns regarding the investigation of the accident. Doc. 28-3 at 16-18; *see* Doc. 30 at 6. The email, which is over a page long, includes the following sentence: "I would like to mention that the victim and witnesses are African American and the officers and assailant [are] white." Doc. 31 at 2 (citing Doc. 28-3 at 16-18). The Mayor forwarded this email to his staff, who forwarded it to the City's police department. Doc. 30 at 7.

Sergeant Johnson, of the Internal Affairs Division at the City's police department, was assigned to investigate the citizen complaint. Doc. 28-2 at 8-9; *see* Doc. 30 at 7. In her deposition, Sergeant Johnson testified that she reviewed the accident report, the radio calls, and the footage from the body camera. Doc. 28-2 at 8-9; *see* Doc. 30 at 7. Sergeant Johnson determined that "several variables had taken place that should have been on [the accident] report." Doc. 28-2 at 10; *see* Doc. 30 at 7. Sergeant Johnson testified that she interviewed the four officers who were

present at the scene of the accident and determined that "the two main officers [who] were left on the scene"—Officer Blancher and Officer Voss—"should have put more in that report." Doc. 28-2 at 10; *see* Doc. 31 at 3. After conducting the interviews, Sergeant Johnson did not investigate Officers Cainion and Calhoun; she investigated only Officers Blancher and Voss. *Id.* When asked why she investigated Officer Blancher and Officer Voss, but not the other officers, Sergeant Johnson testified:

> A: According to the body cam, they had knowledge of things that should have been in the report.
>
> Q: Like what?
>
> A: The alcoholic cans that were outside the vehicle, the baggies, syringes. According to the body cam, they discussed – well, Adam Voss pointed out to Officer Blancher as if, See, see that syringe right there, see that, that's heroine. Those are heroine baggies. You see that? All of this was on the body cam.

Doc. 28-2 at 10.

During the investigation, Officer Blancher submitted to a polygraph test. Doc. 30 at 7. Although Officer Blancher asserts in his brief that he "did not locate any evidence of heroin or needles while working the wreck," Doc. 31 at 2 (citing Doc. 28-1 at 22-23), Officer Blancher does not controvert the City's statement of fact that his polygraph test results indicated "probable deception" in his response to the question whether he "observe[d] any heroin or needles while working" the January 6, 2018 accident, Doc. 30 at 7.

Officer Blancher was given a "Notice of Determination Hearing" that states:

[O]n Saturday, January 6, 2018, you responded to a three car traffic accident with life-threatening injuries in which you failed to notify a supervisor. Furthermore, Officer Adam Voss, along with four other witnesses, observed heroin baggies and syringes inside unit #1's vehicle and on the ground next to the vehicle. Additionally, Officer Voss informed you of possible drugs contributing to the condition of the driver. Finally, you failed to document any drugs or alcohol in the accident report, and you failed to collect any evidence from the scene. Subsequently, you denied any knowledge of the drugs or alcohol to Internal Affairs, but then showed deception when given a polygraph examination.

Doc. 28-1 at 82; *see* Doc. 30 at 8 (citing Doc. 28-1).

The Notice lists the rules that Officer Blancher was charged with violating by engaging in the stated conduct: Jefferson County Personnel Board Rules and Regulations Rule 12 § 12.2;[3] and Birmingham Police Department Rules and

---

[3] Section 12.2(g) "Incompetence or inefficiency;" (j) "Neglect of duty;" (l) "Violation of any rule or regulation of the Appointing Authority, or failure to comply with instructions made and given by a superior officer or supervisor;" (m) "Violation of any of the provisions of the Act or of these rules;" (n) ["]Refusal to cooperate fully and truthfully in any internal investigation conducted by the Board, the Director, or an Appointing Authority, including failure or refusal to answer truthfully any question put to the employee relating to the affairs of government or the conduct of any officer or employee thereof;" (p) "Any other legitimate and nondiscriminatory reason that constitutes good cause for disciplinary action, is reasonably specific, is consistent with the Act and these Rules, and is not motivated by any non-work-related preference or animus for or against any person."

Regulations Procedure Nos. 109-3 § II;[4] 117-10 §§ II, III;[5] 110-5 § 1-B #25;[6] 107-5 § II;[7] 116-1 §§ II, III;[8] 110-2 § VII ## 16, 25;[9] and 109-12 § I.[10] Doc. 28-1 at 81-82. The Notice concludes: "The information concerning the above charges was provided by[,]" among others, Sergeant Johnson, Officer Cainion, and Officer Calhoun. *Id.* at 82.

The determination hearing was held on March 20, 2018. Doc. 30 at 8.  The day after the determination hearing, the City's Chief of Police, Chief Orlando Wilson, issued a Decision Upon Determination Hearing stating that Officer Blancher

[4] "Members will direct and coordinate their efforts in carrying out the functions of the Department in such a manner as will tend to establish and maintain the highest standard of efficiency."

[5] "The officer should prepare the proper accident report and ascertain if any laws have been violated that necessitates a citation bond or arrest," and "[i]f there is either a fatality or serious injury that may result in a fatality: []The Investigating unit should notify a supervisor immediately and request a Fatality Investigator and preserve the scene until the Traffic Fatality Unit arrives. If there is not a Fatality Investigator on duty in the precinct in which the fatality occurs, one will be sent from another precinct."

[6] "Failure to perform or improper performance of assigned duties."

[7] "Report immediately to his immediate supervisor or superior officer any unusual crime, occurrence or condition."

[8] "All such evidence, or material, shall be properly collected, identified, preserved, and promptly turned into the department's property section before the officer ends their tour of duty. The only exceptions will apply to officers assigned to the Forensic Unit"; and "Evidence. Any item considered relevant to an offense with expectations for use in a prosecution."

[9] "Making a false statement, report, communication or entry into an official police record, or other official or required report or record," and "[e]ngaging in conduct that brings discredit to the Police Department."

[10] A. "No member shall make a false official report or knowingly enter or cause to be entered in any Department books, records, or reports, any inaccurate, false or improper information or misrepresentation of facts." B. "A member must speak the truth at all times and under all circumstances." C. "Any member who departs from the truth, either in giving testimony, or in an official written report, or in connection with an official order received by him, or in his official duties, shall be considered in violation of this rule."

was being terminated "for the charges set out in the Notice of Determination Hearing." Doc. 28-1 at 83; *see* Doc. 30 at 8. Officer Blancher appealed his termination to the Personnel Board of Jefferson County, which held an evidentiary hearing on July 31, 2018. Doc. 1 ¶¶ 25-26; *see* Doc. 30 at 8.

After the hearing, the hearing officer issued a report of the hearing and recommended that the termination be reversed; the hearing officer found that Officer Cainion's testimony at the hearing should be disregarded and that the case against Officer Blancher "'rest[ed] on facts that were disproven by [his] body camera video.'" Doc. 31 at 10 (quoting Doc. 31-3 at 14). However, the Personnel Board upheld the termination. Doc. 1 ¶ 26; *see* Doc. 30 at 8. Officer Blancher then appealed to the Circuit Court of Jefferson County, which upheld the Personnel Board's decision. Doc. 1 ¶ 26; *see* Doc. 30 at 8.

Officer Blancher and Officer Voss are white. Doc. 30 at 3. Officer Calhoun and Officer Cainion are Black. *Id*.

Officer Blancher filed the complaint in this case on June 25, 2019, asserting claims for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Doc. 1. A motion by the City to dismiss Officer Blancher's retaliation claim was granted, *see* Docs. 13 & 14, so Officer Blancher's only remaining claim is for racial discrimination in violation of Title VII. Officer Blancher alleges that he was "investigated for discipline and

14

terminated by [the City] on the basis of his race, white, for his actions as a police officer at the scene of the January 6, 2018 accident." Doc. 1 ¶ 35.

## II. STANDARD OF REVIEW

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). A material fact is in "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted).

"The movant's initial burden consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation and other marks omitted). "The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Id.* If the movant bears the burden of proof at trial, the movant's initial burden

is to "show affirmatively" that for each element of its case, no reasonable factfinder could find in the nonmovant's favor. *Id.* (emphasis omitted).

If the nonmovant bears the burden of proof at trial, the movant's initial burden is not to "negate[]" an element of the nonmovant's case through, for example, an affidavit. *Id.* Instead, the movant can satisfy its initial burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). To do this, the movant "must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991) (en banc). For example, the movant may point to the nonmovant's response to an interrogatory and note that the response fails to identify a basis of proof for an essential element of the nonmovant's case. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607 (11th Cir.1991). "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* at 608.

If the moving party has carried its initial burden, Rule 56 requires the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1)(A).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (internal quotation marks omitted). However, if videotape evidence so clearly contradicts the nonmovant's characterization of what happened that no reasonable jury could believe the nonmovant's version of events, the court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## III. ANALYSIS

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). "A plaintiff alleging disparate treatment in an action under Title VII has the burden of persuading the trier of fact that the defendant has committed intentional discrimination." *Lincoln v. Bd. of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 936 (11th Cir. 1983). To do so, a plaintiff need not present evidence that the employee's supervisor was "intentionally racist" or acted on "overt[]" racial bias, *id.* at 943 (internal quotation marks omitted); but the plaintiff must present evidence

17

sufficient for a reasonable jury to find that the plaintiff's race was "a motivating factor" in the challenged action, 42 U.S.C. § 2000e-2(m).

A plaintiff may satisfy this burden "in a variety of ways, one of which is by navigating the now-familiar three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). Another way a plaintiff may satisfy this burden is by "present[ing] direct evidence of discriminatory intent, . . . or [by] demonstrat[ing] a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id.* at 1220 n.6 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Under the *McDonnell Douglas* framework, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by proving": (1) that she was in a protected class and qualified to do her job; (2) "that she was treated differently from another 'similarly situated' individual—in court-speak, a 'comparator,'" *Lewis*, 918 F.3d at 1217, 1220-21; and (3) that the challenged treatment was severe enough to amount to "a serious and material change in the terms, conditions, or privileges of employment," (*i.e.*, it was an "adverse action"), *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001) (emphasis

omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

"If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination." *Id.* (internal quotation marks and brackets omitted).

These burdens are burdens at trial. *See id.* at 1222 (quoting *McDonnell Douglas*, 411 U.S. at 802 ("The complainant in a Title VII trial must carry the initial burden . . . [of making] a *prima facie* case . . . .")). Accordingly, as the party moving for summary judgment, the City "must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *Four Parcels*, 941 F.2d at 1438 n.19.

## A. The City failed to satisfy its burden to demonstrate that Officer Blancher cannot establish a *prima facie* case at trial.

The City does not dispute that Officer Blancher is in a protected class and was qualified to do his job. *See* Doc. 30 at 12-14. Accordingly, the court analyzes whether the City has demonstrated that at trial, Officer Blancher cannot establish the remaining elements of a *prima facie* case of discrimination.

**1. Officer Blancher challenges two actions as adverse actions.**

Officer Blancher was terminated, which is an adverse action. *Davis*, 245 F.3d at 1238-39. In his complaint, his responses to interrogatories, and his brief opposing summary judgment, Officer Blancher asserts also that Sergeant Johnson's investigation of him during her investigation of the citizen complaint was itself an adverse action. Doc. 1 at 8-9; Doc. 28-1 at 53; Doc. 31 at 6. The City did not address this assertion in its primary brief. *See* Doc. 30 at 13. On reply, the City asserts that "[a]n investigation is simply an investigation," and that "[t]he resulting actions taken because of an investigation [are] what constitute[] an [adverse] employment action." Doc. 33 at 4. Neither party cited authority for its position.

The court ordinarily does not consider an argument made for the first time on reply, particularly when that argument is not supported by citation to controlling precedent. Accordingly, although the proposition may be doubtful, *see Staub v. Proctor Hosp.*, 562 U.S. 411, 417-419 (2011) (suggesting that "the mere making of [a] report[]" was not an adverse action); *Rademakers v. Scott*, 350 F. App'x 408, 412-13 (11th Cir. 2009) (holding that an investigation that included "a coercive polygraph examination," after which an employee resigned, was not an adverse action), the court assumes for purposes of analyzing the City's motion that Sergeant Johnson's investigation of Officer Blancher could be an adverse action.

### 2. The City failed to demonstrate that Officer Blancher's comparator evidence is insufficient to establish a *prima facie* case at trial.

Officer Blancher's opposition to summary judgment is based primarily on his argument that he can establish a *prima facie* case because his proposed comparators—Officers Calhoun and Cainion,[11] who are Black—were not subject to the kind of investigation to which he was subjected and were not terminated, even though they too were at the scene of the accident. *See* Doc. 31 at 5-9. (Officer Blancher's secondary argument is that his "mosaic of circumstantial evidence" of racial discrimination is sufficient to create a triable issue under *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321; the court reserves discussion of this argument for the analysis of pretext, *infra* pp. 26-36.)

"[A] comparator analysis must be conducted at the *prima facie* stage of the *McDonnell Douglas* framework . . . ." *Lewis*, 918 F.3d at 1224. At trial, a plaintiff relying on circumstantial evidence under the *McDonnell Douglas* framework "must show that she and her comparators are 'similarly situated in all material respects.'" *Id.* This standard prevents a federal court from overturning an employer's "rational business judgment" and recognizes that Title VII does not impose "a regime in which

---

[11] Officers Calhoun and Cainion were the only comparators Officer Blancher identified in his answers to the City's interrogatories. Doc. 28-1 at 53. In his deposition, Officer Blancher referred to two other officers who he believed engaged in similar conduct and were not disciplined, Doc. 28-1 at 28; *see* Doc. 30 at 15-16, but in his brief, he does not attempt to rebut the City's well-supported argument that those officers are not appropriate comparators. *See* Doc. 30 at 15-16; Doc. 31. Accordingly, Officer Blancher abandoned any argument with regard to the two other officers.

treating **different** things differently violates" the law. *Id.* at 1225 (emphasis in original). "An employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." *Id.* at 1228.

To prevail at trial, "[a] plaintiff needn't prove . . . that she and her comparators are identical save for their race . . . . Nor is it necessary for a plaintiff to prove purely formal similarities—*e.g.*, that she and her comparators had precisely the same title. . . . Nor will minor differences in job function disqualify a would-be comparator." *Id.* at 1227. But a "similarly situated comparator" ordinarily—

- will have engaged in the same basic conduct (or misconduct) as the plaintiff, *see, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992) (holding that a plaintiff terminated for "misuse of [an employer's] property" could not rely on comparators allegedly guilty of "absenteeism" and "insubordination");
- will have been subject to the same employment policy, guideline, or rule as the plaintiff . . . ;
- will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff . . . ; and
- will share the plaintiff's employment or disciplinary history, *see, e.g.*, *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators).

*Lewis*, 918 F.3d at 1227–28 (footnote and some internal citations omitted).

To support the City's contention that Officer Blancher cannot establish that his comparators were similarly situated to him for purposes of making out a *prima*

*facie* case, the City cites his testimony that he was the officer in charge of the accident investigation. Doc. 30 at 15 (citing Doc. 28-1 at 10). The City does not attempt to distinguish Officer Blancher from his comparators by asserting that they engaged in different conduct—the City asserts only that their relative status was different. *See* Doc. 30 at 15. The essence of the City's argument is that when, after interviewing all four officers who were present at the scene of the accident, Sergeant Johnson escalated her investigation of the officer in charge (Officer Blancher), which ultimately resulted in his termination, but not other officers (Officers Calhoun and Cainion), she was "treating different things differently." *Lewis*, 918 F.3d at 1225 (emphasis omitted).

The City's argument fails for two reasons. *First*, the City did not cite evidence to support the proposition that there is a material difference between an officer in charge and other officers for purposes of investigation or discipline. The City asserts that "[i]t was Plaintiff's responsibility to instruct [Officer Calhoun] as to how she could best assist securing the scene," but the City offers no evidence for this point. Doc. 30 at 15. In its statement of undisputed facts, the City cited its written accident-investigation policy to support the fact that "City policy requires supervisors and accident reconstructionist[s] to be called [to] the scenes of accidents involving fatalities or serious bodily injury," *id*. at 4, but the City does not explain how (or even assert that) the policy requires more of an officer in charge than it requires of

other officers at the scene, *see* Doc. 28-1 at 37; Doc. 28-2 at 83-86. Accordingly, even if there may be material differences between an officer in charge and other officers such that they are not similarly situated, the City did not establish this fact.

*Second*, the City's argument fails for the separate reason that Officer Voss was not the officer in charge, yet he too was subject to Sergeant Johnson's escalated investigation. The fact that both an officer in charge and a supporting officer were subject to an escalated investigation undercuts the City's argument that Officers Calhoun and Cainion are not valid comparators because they were not the officer in charge.

Accordingly, the City has not "point[ed] to specific portions of the record in order to demonstrate" that Officer Blancher cannot satisfy his burden of proof at trial to present a *prima facie* case of discrimination by comparing the City's treatment of Officers Cainion and Calhoun to its treatment of him. *Four Parcels*, 941 F.2d at 1438 n.19.

### B. The City articulated numerous (separate and independent) legitimate non-discriminatory reasons why it investigated and terminated Officer Blancher.

Because the City's motion fails with regard to Officer Blancher's *prima facie* case, the City must "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. The City's burden at trial "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted). To satisfy its burden, the City "must clearly set forth, through the introduction of admissible evidence, the reasons" on which the decisionmaker actually relied—it is not enough for the City to "merely . . . contend[]" in its brief that a legitimate reason exists. *Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990) (internal quotation marks and emphasis omitted); *see also Walker v. Mortham*, 158 F.3d 1177, 1181 & n.8 (11th Cir. 1998).

To establish why Officer Blancher was investigated, the City cited Sergeant Johnson's testimony that when she was reviewing Officer Blancher's accident report and the body camera video, she noticed that Officers Blancher and Voss discussed things during the accident investigation "that should have been in the report," such as the reference to heroin baggies, and that, despite Ms. Cook's "serious bodily injury," the narrative on the report "was only maybe three or four lines." Doc. 30 at 7 (citing Doc. 28-2 at 9-10). Because Officer Blancher's report omitted these things, Sergeant Johnson escalated her investigation of Officers Blancher and Voss. Doc. 28-2 at 10.

To establish why Officer Blancher was then terminated, the City cited the Notice of Determination Hearing. Doc. 30 at 8 (citing Doc. 28-1 at 80-82). The

Notice states that Officer Blancher violated the City's rules and procedures, *see supra* pp. 12-13 & nn. 3-10, when:

> [1] [O]n Saturday, January 6, 2018, you responded to a three car traffic accident with life-threatening injuries in which you failed to notify a supervisor.
>
> [2] Furthermore, Officer Adam Voss, along with four other witnesses, observed heroin baggies and syringes inside unit #1's vehicle and on the ground next to the vehicle. . . . Officer Voss informed you of possible drugs contributing to the condition of the driver. . . . [Y]ou failed to document any drugs or alcohol in the accident report, and you failed to collect any evidence from the scene.
>
> [3] Subsequently, you denied any knowledge of the drugs or alcohol to Internal Affairs, . . . then showed deception when given a polygraph examination.

Doc. 28-1 at 82. The City also cited Chief Wilson's Decision Upon Determination Hearing, in which he states that Officer Blancher is terminated "for the charges set out in the Notice of the Determination Hearing." Doc. 30 at 8 (citing Doc. 28-1 at 83). This evidence is sufficient to satisfy the City's burden to articulate legitimate, nondiscriminatory reasons why it investigated Officer Blancher and terminated his employment.

### C. The City demonstrated that Officer Blancher cannot establish that the reasons the City proffered for investigating him and terminating his employment are pretextual.

At trial, when the City articulated its legitimate, nondiscriminatory reasons for investigating Officer Blancher and terminating his employment, "the presumption of discrimination" raised by Officer Blancher's *prima facie* case would "drop[] out of the picture," and the question would be whether Officer Blancher's

race was a motivating factor in the City's decision to investigate and terminate him. *Reeves*, 530 U.S. at 143. In attempting to persuade the jury that race was a motivating factor, Officer Blancher could present evidence that each of the City's "proffered explanation[s] [are] unworthy of credence" (*i.e.*, pretextual). *Id.* (internal quotation marks omitted).

If a reasonable jury could find that each of the City's proffered reasons are "unworthy of credence" because they suffer from "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," *Jackson v. Alabama State Tenure Commission*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted), then the jury could render a verdict for Office Blancher, *Reeves*, 530 U.S. at 148.

When a defendant employer's challenged action was taken in response to charges of employee misconduct, and it is undisputed that the relevant decisionmaker reasonably believed that the charges were true, a plaintiff employee may not prevail at trial merely by arguing that he was actually innocent of the charges. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). Rather, to prevail the employee must present evidence sufficient for a factfinder[12] to infer that the decisionmaker did not "honestly believe[]" that the employee engaged in the misconduct. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989).

---

[12] In *Hawkins*, the trial court acted as the factfinder in a nonjury trial. 883 F.2d at 979.

Evidence suggesting that reasonable people could **disagree** that the employee ought to have been subjected to the challenged action "does not, without more, create a basis to **disbelieve** an employer's explanation" for taking the action, at least not where that explanation is reasonable. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (emphasis in original).

When (as here) an employer proffers multiple reasons for the challenged action, each reason that the employer proffers must be "analyze[d] . . . separately." *Chapman v. AI Transp.*, 229 F.3d 1012, 1037 n.30 (11th Cir. 2000) (en banc). So if a defendant proffers three reasons for the challenged action, and the plaintiff shows that "two of the reasons [are] pretextual" but "fail[s] to present sufficient evidence to show the third reason was pretextual," then "the defendant [is] entitled to judgment as a matter of law." *Id*.

Under these legal standards, to prevail on its motion for summary judgment, the City must demonstrate that with regard to at least one of its proffered reasons for investigating and terminating Officer Blancher, Officer Blancher cannot establish that the reason is pretextual. *Id*.

To support the City's contention that Officer Blancher cannot establish that its reasons were pretextual, the City pointed to two portions of Officer Blancher's deposition. Doc. 30 at 9. *First*, the City cited Officer Blancher's testimony when asked "[w]hat specifically" informs his belief that Sergeant Johnson targeted him for

investigation due to his race. Doc. 28-1 at 19. Officer Blancher testified that he and Officer Voss are white and were the only officers investigated, and he asserted that "there was nothing to prove anything, other than I just did the report." *Id*. at 19-20. The City is correct that this is not a basis to establish pretext. As explained above, the fact that Officer Blancher prepared the report—which Sergeant Johnson believed suffered from significant omissions (namely, the circumstances Officer Blancher discussed with Officer Voss on the body camera footage), Doc. 28-2 at 10, and which was the basis for Chief Wilson's charge against Officer Blancher for making an "inaccurate, false or improper" report, Doc. 28-1 at 82—is one of the legitimate, nondiscriminatory reasons the City proffered to explain why he was investigated and terminated.

*Second*, the City cited Officer Blancher's testimony that the only relevant race-based statement that he could identify was the acknowledgement in the email from Ms. Cook's great-uncle to Mayor Woodfin that Officer Blancher is white and Ms. Cook and the witnesses at the scene were Black. Doc. 28-1 at 27. According to Officer Blancher, Ms. Cook's great-uncle's reference to race injected race into the City's decision-making process and, together with the escalated internal investigation of only the white officers involved in the accident investigation (he and Officer Voss), creates a "convincing mosaic of circumstantial evidence" of racial

discrimination sufficient to create a triable issue of fact under *Smith v. Lockheed-Martin Corp.*, 644 F.3d at 1328 (internal quotation marks omitted). *See* Doc. 31 at 9.

Here again, the City is correct—this argument by Officer Blancher is not a basis to establish that the City's reasons for investigating and terminating him were pretextual. Officer Blancher's case is unlike *Smith*. In *Smith*, the plaintiff received an email making racist jokes and shared the email with a coworker friend, violating their employer's "zero tolerance policy." 644 F.3d at 1324. The employer found out about the email and fired the plaintiff, who was white. *Id*. Within two months of the plaintiff's termination, the employer discovered that two Black employees "had also violated the zero tolerance policy by transmitting racist emails targeting whites," but these employees "merely received temporary suspensions as discipline for their conduct." *Id*.

In opposing the employer's motion for summary judgment, the plaintiff presented a "mosaic" of evidence sufficient to support an "inference that [the employer] sought to fire all whites who distributed racist emails and, thus, fired [the plaintiff] because of his race." *Id*. at 1345. "[S]trengthen[ing]" that inference was evidence that the employer made disciplinary decisions using a matrix that displayed the employee's race. *Id*. at 1345-46. The Eleventh Circuit held that "[o]n its face, the 'matrix' indicates that race was pertinent to the discipline decisions made, and [the employer] has not explained satisfactorily why this was legitimate. Therefore, . . .

[the employer's] injection of race into its decision-making process yields an unavoidable inference that the employee's race impacted the discipline determination . . . ." *Id*. at 1346 (footnote omitted).

Officer Blancher's evidence does not support the "unavoidable inference" that the plaintiff's evidence in *Smith* supported. An email created and sent by a resident (not a City employee) acknowledging that Officer Blancher is white is fundamentally unlike the discipline matrix the employer used in *Smith*—that email does not "[o]n its face" indicate what factors formed the basis for the City's disciplinary decisions. Further, the City has articulated a legitimate, nondiscriminatory reason why Officer Blancher and Officer Voss were the subjects of the escalated investigation—namely, that they were the ones on the body camera video who discussed significant information (such as the presence of heroin baggies) that Officer Blancher omitted from his report. *See* Doc. 28-2 at 10. The email from Ms. Cook's great-uncle does not weaken that explanation.

The City satisfied its initial summary judgment burden to "point to specific portions of the record in order to demonstrate that [Officer Blancher] cannot meet [his] burden of proof at trial" to show pretext. *Four Parcels*, 941 F.2d at 1438 n.19; see also *Clark,* 929 F.2d at 607. Accordingly, to avoid summary judgment, Officer Blancher must establish that he could show that each of the City's reasons for

investigating and terminating him were pretextual. *Celotex*, 477 U.S. at 324; *Chapman*, 229 F.3d at 1037 n.30.

In response to the City's motion, Officer Blancher identifies no evidence that the City's reasons for investigating and terminating him were pretextual. Officer Blancher does not present evidence that his comparators turned in accident reports that omitted the kind of information that his report omitted. Doc. 31 at 9-10. Officer Blancher asserts that his comparators failed to supplement his report, but he does not explain why it is inconsistent for the City to investigate and terminate an officer for turning in a report that omits certain information, but not investigate or terminate that officer's colleagues for failing to supplement his report. *See id.* Separately, Officer Blancher does not present evidence that his comparators took a polygraph test that indicated probable deception. *See id.*

Instead, Officer Blancher contends that two findings in the report and recommendation the hearing officer prepared in connection with Officer Blancher's appeal of his termination demonstrate weaknesses in the City's proffered reasons: (1) the finding that Officer Cainion's testimony at the July 31, 2018 hearing should be disregarded; and (2) the finding that the City's "case [against Officer Blancher] rest[ed] on facts that were disproven by [Officer Blancher's] body camera video." Doc. 31-3 at 14, 16; Doc. 31 at 10.

32

As for the first finding, the City's motion for summary judgment does not rely on Officer Cainion's testimony at the July 31, 2018 hearing, and the City did not cite to that testimony in its statement of material facts. *See* Doc. 30. Additionally, the July 31, 2018 hearing occurred after Sergeant Johnson's decision to investigate Officer Blancher and Chief Wilson's decision to terminate his employment, so Officer Cainion's testimony at that hearing could not have been a basis for those decisions and the hearing officer's finding that that testimony should be disregarded is not a basis for Officer Blancher to establish pretext. Finally, Officer Blancher uses Officer Cainion's testimony at that hearing as **credible** evidence to support a fact he asserts is undisputed: "Officer Cainion . . . was not investigated for disciplinary action for not writing a supplement report for finding baggies of heroin, despite not being the primary officer on scene." Doc. 31 at 3 ¶ 4. Accordingly, on Officer Blancher's own argument the credibility of Officer Cainion's testimony at the July 31, 2018 hearing is not an issue of material fact in this case.

As for the second finding, that the City's "case rest[ed] on facts that were disproven by [Officer Blancher's] body camera video," that finding is not evidence that can satisfy Officer Blancher's burden to establish pretext. This is so for two reasons, both of which are related to the City's contention that the July 31, 2018 hearing involved "different rules of evidence and procedure, and a different standard of proof" from those applicable in Title VII cases. *See* Doc. 33 at 2.

*First*, the hearing officer's finding about Officer Blancher's body camera video does not "rebut all of the defendant's proffered nondiscriminatory reasons for its actions." *Chapman*, 229 F.3d at 1037 (internal quotation marks omitted). Recall that the City's disciplinary decision about Officer Blancher rested on the following three reasons:

> [1] [O]n Saturday, January 6, 2018, you responded to a three car traffic accident with life-threatening injuries in which you failed to notify a supervisor.
> [2] Furthermore, Officer Adam Voss, along with four other witnesses, observed heroin baggies and syringes inside unit #1's vehicle and on the ground next to the vehicle. . . . Officer Voss informed you of possible drugs contributing to the condition of the driver. . . . [Y]ou failed to document any drugs or alcohol in the accident report, and you failed to collect any evidence from the scene.
> [3] Subsequently, you denied any knowledge of the drugs or alcohol to Internal Affairs, . . . then showed deception when given a polygraph examination.

Doc. 28-1 at 82. In this Title VII case, the City's third reason must be analyzed separately from its first two reasons. *Chapman*, 229 F.3d at 1037 n.30. The analysis of that reason turns on whether Chief Wilson honestly believed the results of the polygraph examination, and honestly believed that Officer Blancher had knowledge of things that he denied to Internal Affairs—not whether the polygraph examination was accurate. *Hawkins*, 883 F.2d at 980 n.2. But the hearing officer's finding about Officer Blancher's body camera video relates only to the first two reasons, not the third, because the body camera video cannot change the results of the polygraph examination. So the hearing officer's finding about what the body camera video

proves could not possibly rebut the City's assertion that because of the results of the polygraph examination, Officer Blancher's employment was terminated.

*Second*, the hearing officer's finding about Officer Blancher's body camera video is not the kind of evidence that can establish pretext because the hearing officer grounded that finding on issues that are irrelevant in the pretext stage of the analysis of a Title VII claim:

> [Officer Blancher] made a judgment call on the scene of an accident that may not have been the best, but was neither so egregious as **to warrant termination**, nor was there any **significant** evidence to show that he **deliberately** had failed to report **known** drugs or alcohol use by the driver of the vehicle at fault. . . . No[ne of Officer Blancher's] errors w[as] deliberate.

Doc. 31-3 at 14 (emphases added). As the bolded words demonstrate, when the hearing officer made his finding about the City's case against Officer Blancher, the hearing officer weighed the evidence regarding Officer Blancher's culpability and disagreed that it warranted termination. His finding does not suggest that Chief Wilson and Sergeant Johnson did not honestly believe that Officer Blancher had been "informed . . . of possible drugs contributing to the condition of the driver." Doc. 28-1 at 82. Nor does the finding suggest that Officer Blancher was not investigated and then terminated for failing to document that information. *Id*. Officer Blancher's assertion that he can use the hearing officer's finding as evidence of pretext "confuses **disagreement** about the wisdom of an employer's reason with **disbelief** about the existence of that reason and its application in the circumstances.

Reasonable people may disagree about whether persons involved in . . . improprieties" ought to be terminated, "but such potential disagreement does not, without more, create a basis to disbelieve an employer's explanation that it in fact based its decision" to terminate the employee on those improprieties and not on his race. *Combs*, 106 F.3d at 1543 (some emphasis omitted).

Accordingly, Officer Blancher "fail[ed] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof" at trial, and the City is entitled to summary judgment. *Four Parcels*, 941 F.2d at 1438 (internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the City established "that there is no genuine dispute as to any material fact and [that] the [City] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, the City's motion for summary judgment is due to be granted.

**DONE** and **ORDERED** this 28th day of May, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE